NING, LILLY & JONES
MICHAEL A. LILLY      #1681
707 Richards Street, Suite 700
Honolulu, Hawaii  96813
Email: Michael@nljlaw.com
Telephone:  (808) 528-1100
Facsimile: (808) 531-2415

THE COLLINS LAW FIRM
JOHN A. SOPUCH III     #8312
1717 Park Street, Suite 200
Naperville, IL 60563
Email: jsopuch@collinslaw.com
Telephone: (630) 527-1595
Facsimile: (630) 527-1193

CARTER SCHOLER ARNETT HAMADA
    & MOCKLER, PLLC
J. ROBERT ARNETT II #4191
8150 N. Central Expressway, 5th Floor
Dallas, TX 75206
Email: barnett@carterscholer.com
Telephone: (214) 550-8188
Facsimile: (214) 550-8185

Attorneys for Plaintiff RNI, N.V., L.P.

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RNI, N.V., L.P.,<br><br>       Plaintiff,<br><br>  vs.<br><br>SIDNEY K. KANAZAWA, ESQ., a resident of California, MCGUIREWOODS, LLP, a Virginia | CIVIL NO:  1:16-CV-000053<br><br>COMPLAINT; DEMAND FOR JURY TRIAL |

limited liability partnership, and DOE
DEFENDANTS 1-50,

                    Defendants.

## COMPLAINT

Plaintiff RNI, N.V., L.P. (hereinafter, "Plaintiff"), alleges as follows as its Complaint against the above-named Defendants:

## INTRODUCTION

Plaintiff files this Complaint as a precautionary measure to eliminate potential statute of limitations claims by Defendants during the pendency of Plaintiff's appeal from final judgments confirming an arbitration award and awarding attorneys' fees in favor of Centex Homes and against Plaintiff, currently pending as Nos. CAAP-14-0001036 and CAAP-14-0001373 in the Intermediate Court of Appeals of the State of Hawaii (the "RNI/Centex Appeal"). Plaintiff offered to enter into a tolling agreement with Defendants to obviate the filing of this action pending the RNI/Centex Appeal, but Defendants refused. Plaintiff intends to move to stay this action pending resolution of the RNI/Centex Appeal.

## PARTIES

1.      Plaintiff RNI, N.V., L.P., is a Nevada limited partnership with its principal place of business in Las Vegas, Nevada. The general partner of Plaintiff is RNI Nevada, LLC, a Nevada limited liability company with its principal place of

business in Las Vegas, Nevada.  The limited partners of Plaintiff are citizens and residents of either the State of Hawaii or the State of Nevada.  Plaintiff purchased Unit B-505 at the Beach Villas at Ko Olina, a resort project on O'ahu.

2.     Defendant Sidney K. Kanazawa is, upon information and belief, a citizen and resident of the State of California.  Defendant Kanazawa is a partner of the law firm of McGuireWoods, LLP and, according to that firm's website, is licensed to practice law in the states of California and Hawai`i.

3.     Defendant McGuireWoods, LLP is a limited liability partnership organized under the laws of the State of Virginia.  It has offices in the States of Georgia, Texas, Maryland, Virginia, Illinois, Florida, California, New York, Pennsylvania, North Carolina, and Delaware, the District of Columbia, and two foreign states.

4.     Doe Defendants 1-50 are persons, partnerships, associations, companies, corporations, or entities whose names, identities, capacities, activities and/or responsibilities are presently unknown to Plaintiff or its attorneys, except that Doe Defendants 1-50 were and/or are subsidiaries, servants, employees, representatives, co-venturers, associates, consultants, owners, lessees, lessors, guarantors, assignees, assignors, licensees, and/or licensors of Defendants and were or are in some manner presently unknown to Plaintiff or its attorneys engaged or involved in the activities alleged herein or responsible for the activities of which

Plaintiff complain, or should be subject to the relief Plaintiff seeks.  Plaintiff prays for leave to certify the true names, identities, capacities, activities and/or responsibilities of Doe Defendants 1-50 when, through further discovery in this case, the same are ascertained.  Plaintiff has made a good faith effort to identify said Doe Defendants prior to filing this Complaint, including interviewing witnesses and reviewing documents on file with the Department of Consumer Affairs and the Circuit Court of the First Circuit.

JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      This Court has personal jurisdiction over Defendants because, at the pertinent time of the allegations set forth herein, they were conducting business in the State of Hawai`i and committed acts in the State of Hawai`i giving rise to Plaintiffs' causes of action.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's causes of action occurred in the City and County of Honolulu.

## STATEMENT OF FACTS

8.    Centex   Homes   ("Centex")   developed   a   luxury   beachfront condominium project in a resort setting on the Southwestern coast of the Island of Oahu, State of Hawai`i, known as The Beach Villas at Ko Olina ("BVKO").  Centex prominently featured and represented in its sales and contract materials the amenities that were and would be available to the owners of units in the project.  In these sales and contract materials, Centex took affirmative steps to conceal from prospective purchasers that Centex had given a company unrelated to Centex, Ko Olina Development, LLC ("KOD"), an unconditional option to purchase the commercial apartments that comprised the amenities and, upon exercising those option rights, KOD had the right to exclude the unit owners from access to or use of the amenities.

9.    In May of 2009, Defendants hosted a meeting at the McGuireWoods, LLP office in Century City, California.  The purpose of the meeting was to advise senior executives from Centex that the owners of condominium units at the BVKO (which included Plaintiff) had significant claims against Centex arising from Centex's misrepresentations and omissions regarding the amenities.  With the help of a power-point presentation that he and his firm had put together, Defendant Kanazawa explained to the senior executives of Centex who were in attendance at the meeting that the owners of the units at the BVKO project, including Plaintiff, had claims against Centex for, among other things, common law fraud, violations of

HRS § 514 B-94, HRS § 514 B-67, Hawaii's UDAP statute, i.e., HRS §§ 480-2 and 480-13, and were entitled to rescission in connection with their purchases of units from Centex.   Defendants Kanazawa and McGuireWoods, LLP believed, and represented to Centex, that Centex's conduct subjected Centex to punitive and treble damages as well as the recovery of attorneys' fees.   Defendants Kanazawa and McGuireWoods, LLP thus valued the legal claims that the BVKO owners, including Plaintiff, had against Centex at more than $100 million.   At the Century City meeting, Kanazawa told the Centex executives in attendance that they should recharacterize the resort's limited common elements to take those away from KOD's control, and should place restrictions on KOD's ability to use of the amenities once it exercised its option to purchase them.

10.   About one month after the Century City meeting in June of 2009, Centex determined (consistent with Kanazawa's suggestions at the Century City meeting) that it was in Centex's best interest to attempt to "recharacterize" certain limited common elements at the BVKO and to try and restrict what KOD could do with the amenities once it purchased them in an effort to ensure that KOD would never be able to control those amenities, and thereby exclude unit owners from the use thereof.   To that end, in June of 2009, Centex began to take affirmative steps to try and take from KOD certain rights that KOD had obtained in the amenities by virtue of the unconditional option that KOD had previously obtained from Centex.

11.    As a result of Centex's affirmative steps to take away KOD's rights by attempting to "recharacterize" certain limited common elements and impose conditions on KOD's rights in the amenities that it had the option to purchase, KOD sued Centex ("The KOD/Centex Action"), and asked the Court to declare that Centex did not have the right to "recharacterize" the subject limited common elements and did not have the right to impose any conditions on KOD's rights in the amenities. In July of 2009, Centex counterclaimed against KOD, arguing, among other things, that its attempted "recharacterization" of certain limited common elements was proper in all respects and that it should be able to place restrictions and conditions on KOD's rights in the BVKO amenities.  The Federal Court allowed Centex to recharacterize the limited common elements, but refused to permit Centex to place any conditions on KOD's rights to the resort's amenities, finding that KOD would be able to essentially do what it pleased with the amenities once it exercised the option that Centex had given it to purchase all of the resort's amenities for one dollar. The Ninth Circuit Court of Appeals would ultimately affirm the trial court's decisions.

12.    Beginning in January 2010, approximately seven (7) months after the KOD/Centex Action had been initiated, Defendants counseled Plaintiff to become parties to a Settlement and Release Agreement (the "Aggregated Agreement"), pursuant to which Plaintiff would forever release its claims against Centex.    In

February 2010 and on "behalf" of Defendants' clients, which included Plaintiff, Defendant Kanazawa executed the Aggregated Agreement.   The Aggregated Agreement had an Effective Date, as that term is defined in the Aggregated Agreement, of February 9, 2010.

13.   In the Aggregated Agreement, as "consideration" for the full releases obtained from more than 85 unit owners, including Plaintiff, Centex agreed only that it would continue to pursue its counterclaim as long as the Court in the KOD/Centex Action did not declare that Centex did not have the right to "recharacterize" the limited common elements or impose conditions on KOD's use of the amenities. Centex has admitted that it intended to continue the prosecution of its counterclaim in the KOD/Centex Action whether or not any unit owners agreed to be bound by the Aggregated Agreement.

14.   In return for Defendants Kanazawa's and McGuireWoods, LLP's efforts in connection with obtaining as many signatories as possible to the Aggregated Agreement who would sign away their significant rights against Centex, Centex agreed to pay Defendants Kanazawa and McGuireWoods, LLP their "fees, expenses and costs" incurred in connection with such efforts.   In short, the more clients that Defendants Kanazawa and McGuireWoods, LLP could find to agree to be bound by the Aggregated Agreement and give up all of their rights against

Centex, the more money Centex would pay Defendants Kanazawa and McGuireWoods, LLP.

15.    An attorney-client relationship existed between Plaintiff on the one hand, and Defendants Kanazawa and McGuireWoods, LLP, on the other.

16.    Despite Defendants Kanazawa's and McGuireWoods, LLP's obligations to their clients, Defendants failed to apprise Plaintiff of the significant rights that it had against Centex which it was forever giving away by agreeing to be bound by the Aggregated Agreement and authorizing Defendant Kanazawa to enter into the Aggregated Agreement on their behalf.  Those significant rights included, at a minimum, the claims and causes of action of which Defendants Kanazawa and McGuireWoods, LLP had apprised Centex (through the use of, *inter alia*, a power-point presentation) at, among other times, the meeting referenced above which took place in May of 2009 at McGuireWoods, LLP's offices in Century City, California.

17.    At no time did Defendant Kanazawa or any member of McGuireWoods, LLP ever directly meet with, speak to or communicate with Plaintiff regarding the significant rights (like those that Defendants had described to Centex at the May 2009 Century City meeting) that it was forever releasing by permitting Defendants to enter into the Aggregated Agreement on "their behalf."  At no time did Defendant Kanazawa or any member of McGuireWoods, LLP ever share

9

with Plaintiff the power-point that Kanazawa used at the May 2009 meeting with the Centex executives at his offices.

18.    At no time did Defendant Kanazawa or any member of McGuireWoods, LLP ever explain to Plaintiff that it was forever releasing significant rights in return for virtually nothing.

19.    As a direct and proximate result of Defendant Kanazawa's and McGuireWoods, LLP's conduct, as set forth herein, Plaintiff has suffered significant damages.

20.    In or about December 2010, Centex conveyed the commercial apartments that comprised the amenities to KOD.  In February 2011, KOD denied the BVKO residential apartment owners, including Plaintiff, access to and use of the amenities.

21.    Plaintiff, together with Troy Tanga and Kelley Kramers, commenced a malpractice and breach of fiduciary duty case against Defendants in the Circuit Court of the First Circuit of the State of Hawaii, Civil No.  12-1-2508-10 KKS, which Defendants removed to the United States District Court for the District of Hawaii, where it was docketed as Case No. 1:12-cv-00590-JMS-BMK (the "First Federal Action").

22.    On July 18, 2013, the Honorable Virginia Lea Crandall confirmed a 34-page arbitration award authored by retired Second Circuit Court Judge Joel August

against Centex (the "Nguyen Decision").  That arbitration had been brought by two owners of a BVKO unit (Linda and Con Nguyen) who were identically situated to Plaintiff, with the exception of the releases that Kanazawa had signed on behalf of his clients.  In his award, Judge August detailed Centex's misconduct and then concluded that Centex (1) breached the sales contract of the Nguyens (who, again, were identically situated to Plaintiffs), (2) violated Hawai`i's UDAP statute (HRS 480-2, and 480-13) as it respected the the Nguyens  (3) breached the fiduciary duties that it (Centex) owed to the Nguyens, (4) was required to repurchase two of the Nguyen's units (i.e., awarded the Nguyen's rescission), and (5) had to pay all of the Nguyen's attorney's fees and costs incurred in the arbitration.  In other words, Judge August found that the KOBV condo owners in that case (the Nguyens)— identically situated to Plaintiff for all relevant purposes—had prevailed on the very same valuable claims which, at the Century City meeting in 2009, Defendants had told Centex that the owners possessed, but which claims Defendants never bothered to reveal to Plaintiff.

23.    Based in part on the findings and conclusions in the Nguyen Decision, Plaintiff concluded that the release in the Aggregated Agreement was unenforceable and ineffective to release any of Plaintiff's claims against Centex. Accordingly, Plaintiff, Tanga, and Kramers moved to voluntarily dismiss the First Federal Action without prejudice in order to pursue their claims against Centex in

arbitration. Plaintiff specifically stated in that motion that, if Plaintiff was unsuccessful in having the release in the Aggregated Agreement held unenforceable, then Plaintiff may again seek to pursue its claims against Defendants. Defendants stipulated to the voluntary dismissal of the First Federal Action without prejudice, and with certain conditions, and the Court approved the stipulation on September 5, 2013.

24. On or about September 9, 2013, Plaintiff, Tanga, and Kramers, together with Charles and Linda Carson and Ronald and Joan Parsons, two couples who owned units at the BVKO and on whose behalf Kanazawa had signed the Aggregated Agreement (collectively, the "Arbitration Claimants"), commenced an arbitration against Centex before Dispute Prevention and Resolution, Inc., and former Chief Justice Ronald Moon was appointed as the arbitrator.

25. The Arbitration Claimants argued to Arbitrator Moon that the release in the Aggregated Agreement was unenforceable. The Arbitration Claimants argued in the alternative to Arbitrator Moon that even if the release in the Aggregated Agreement was enforceable it did not cover their breach of contract claims because those claims had first accrued in February 2011, which was supported by Judge August's determination in the Nguyen Decision.

26. Arbitrator Moon rejected the Arbitration Claimants' arguments and entered a summary judgment in favor of Centex that the Aggregated Agreement was

enforceable and effective to release all of the Arbitration Claimants' claims against Centex.  Arbitrator Moon entered a final arbitration award in favor of Centex and awarded Centex almost $750,000 in attorneys' fees and costs.

27.    Centex moved to confirm the arbitration award and the Arbitration Claimants moved to vacate the arbitration award before the Circuit Court of the First Circuit of the State of Hawaii, in Case S.P. No. 14-1-0156 (ECN).   The Circuit Court, by the Honorable Edwin C. Nacino, denied the motions to vacate and granted the motions to confirm the arbitration award and entered a final judgment on July 29, 2014.  The Arbitration Claimants filed a notice of appeal from the judgment.

28.    Centex   commenced   collection   actions   against   the   Arbitration Claimants.  Plaintiff was able to post a supersedeas bond to stop collection actions against it, but the other Arbitration Claimants could not post such a bond. Accordingly, Tanga, Kramers, the Carsons, and the Parsons settled with Centex and dismissed their appeal.  Plaintiff continued to pursue its appeal.

29.    On December 4, 2014, Judge Nacino entered a supplemental final judgment awarding Centex attorneys' fees and costs incurred in the Circuit Court proceeding against Plaintiff.  Plaintiff filed a notice of appeal from the supplemental final judgment.

30.    Plaintiff's appeal from the July 29, 2014 final judgment is pending before the Hawaii Intermediate Court of Appeals as Case No. CAAP-14-0001036.

Plaintiff's appeal from the December 4, 2014 supplemental final judgment is pending before the Hawaii Intermediate Court of Appeals as Case No. CAAP-14-0001373. Briefing has concluded on the appeals, which have been consolidated.

31.     If the ultimate resolution of the RNI/Centex Appeal is the affirmance of Judge Nacino's judgment confirming Arbitrator Moon's award, then Defendants' wrongful conduct will have proximately caused Plaintiff to lose all of its valuable claims against Centex.   If, in the alternative, the ultimate resolution of the RNI/Centex Appeal is the reversal of Judge Nacino's judgment and the vacating of Arbitrator Moon's award, then Plaintiff may still be able to pursue claims against Centex, notwithstanding Defendants' wrongful conduct.

## CAUSES OF ACTION

Count One:  Legal Malpractice

32.     Plaintiff repeats and incorporates by reference its allegations in paragraphs 1 through 31 of this Complaint.

33.     Plaintiff, on the one hand, and Defendants Kanazawa and McGuireWoods, LLP, on the other hand, had an attorney-client relationship.

34.     Defendants Kanazawa and McGuireWoods, LLP owed Plaintiff a duty to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks that they undertake.

35.     Defendants Kanazawa and McGuireWoods, LLP breached their duty to Plaintiff by, among other things, negotiating a settlement that gave away (unless Judge Nacino's judgment is reversed and Arbitrator Moon's award is vacated) Plaintiff's rights for almost no value, negotiating a settlement that rewarded themselves at the expense of Plaintiff, failing to adequately advise Plaintiff of the rights, claims and prospective damages it was releasing, failing to disclose to Plaintiff that they were being paid by Centex to sign up unit owners to release their claims, and binding Plaintiff to a settlement that no reasonable attorney, having undertaken a reasonable investigation into the facts and law as would be appropriate under the circumstances and with knowledge of the same facts, would have recommended.

36.     There is a causal connection between the breaches of duty by Defendants Kanazawa and McGuireWoods, LLP, and Plaintiff's injuries.

37.     Plaintiff suffered actual loss or damages as a result.

Count Two:  Breach of Fiduciary Duty

38.     Plaintiff repeats and incorporates by reference its allegations in paragraphs 1 through 37 of this Complaint.

39.     As Plaintiff's attorneys, Defendants Kanazawa and McGuireWoods, LLP owed Plaintiff fiduciary duties.

40.     Defendants Kanazawa and McGuireWoods, LLP breached their fiduciary duties to Plaintiff by, among other things, failing to obtain informed consent before entering into a settlement that aggregated the claims of the unit owners; failing to advise Plaintiff that entering into a settlement that aggregated the claims of the unit owners gave rise to a conflict of interest between Defendants and each member of the group, including Plaintiff; concealing material facts from members of the group, including Plaintiff; and failing to ensure the settlement with Centex (including the term for payment of Defendants Kanazawa and McGuireWoods, LLP by Centex) were fair and equitable to Plaintiff.  Defendants failed to make reasonable use of the confidence that Plaintiff placed in them; failed to act in the utmost good faith and exercise the most scrupulous honesty toward Plaintiff; failed to place the interests of Plaintiff before their own; they used the advantage of their position to gain benefits for themselves at the expense of Plaintiff; placed themselves in a position where their self-interest conflicted with their obligations as a fiduciary; and failed to fully and fairly disclose all material information to Plaintiff concerning the settlement with Centex.

41.     Indeed, the Aggregated Agreement was an aggregated settlement of the various claims of the group of unit owners which required Defendants to comply with Rule 1.8(g) of the Hawai`i Rules of Professional Responsibility.  Prior to entering into the Aggregated Agreement, Defendants failed to obtain informed

consent from the group including, but not limited to, the terms and conditions of the Aggregated Agreement, the existence and nature of all claims and defenses involved in the Aggregated Agreement, the details of each group member's participation in the Aggregated Agreement, and the total fees and costs to be paid to Defendants as a result of the Aggregated Agreement, including the fact that the fees and costs were being paid by Centex.

42.     Defendants Kanazawa's and McGuireWoods, LLP's breaches of fiduciary duties proximately caused injury to Plaintiff.

43.     Plaintiffs suffered certain actual loss or damages as a result.

WHEREFORE, Plaintiff pray for relief as follows:

A.     For damages against the Defendants in an amount to be determined at trial;

B.     For punitive damages in an amount to be determined at trial;

C.     For reimbursement of costs and expenses, including their reasonable attorneys' fees;

D.     For prejudgment and post-judgment interest at the highest rates permitted by law; and

E.     For such further and additional relief as the Court finds just and equitable.

DATED:  Honolulu, Hawai`i, February 8, 2016.


*/s/ J. Robert Arnett II*
MICHAEL A. LILLY
JOHN A. SOPUCH III
J. ROBERT ARNETT II
Attorneys for Plaintiff RNI, N.V., L.P.